UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
MARY W. CARLSON, On Her Own Behalf and
On Behalf Of All Others Similarly Situated,

                                     Plaintiff,                    REPORT AND
                                                                            RECOMMENDATION

                     -against-                               CV 09-3131 (SJF)(ETB)

HSBC-NORTH AMERICA (US) RETIREMENT
INCOME PLAN, and the HSBC-NORTH AMERICA
HOLDINGS ADMINISTRATIVE COMMITTEE,
As Plan Administrator,

                                       Defendants.
---------------------------------------------------------------------X

TO THE HONORABLE SANDRA J. FEUERSTEIN, United States District Judge:

      Before the Court is the defendants' motion to dismiss plaintiff's Amended Class Action

Complaint, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), for lack of

subject matter jurisdiction and failure to state a claim upon which relief can be granted.  For the

following reasons, I recommend that defendants' motion be granted and that this action be

dismissed in its entirety.

FACTS

      Plaintiff, Mary W. Carlson, is a former employee of Manhattan Savings Bank ("MSB")

and a retired participant in the MSB Pension Plan.  (Am. Compl. ¶ 1.)   In an effort to obtain

higher pension benefits, plaintiff commenced the within action pursuant to the Employee

Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq., against

defendants, the HSBC-North America (US) Retirement Income Plan (the "HSBC Plan" or the "Plan"), which pays her pension as a result of a merger with MSB, and the HSBC-North America Holdings Administrative Committee (the "Commitee"), which administers the plan. (Am. Compl. ¶ 1.) Plaintiff brings this action on behalf of herself and all other similarly situated participants in the HSBC Plan. (Am. Compl. ¶ 1.)

Plaintiff began her employment with MSB in 1957 and continued to work for MSB until September 17, 1967, when she voluntarily left to take an employment position with The Savings Bank Trust Company ("SBTC"). (Am. Compl. ¶ 8.) Plaintiff remained employed by SBTC until September 4, 1970. (Am. Compl. ¶ 9.) Between 1970 and 1973, plaintiff found employment outside of the banking industry but returned to it on August 20, 1973, when she resumed employment with MSB. (Am. Compl. ¶ 10.)

Plaintiff remained employed by MSB until May 31, 1980, when she retired with a deferred vested pension. (Am. Compl. ¶ 11.) Plaintiff began receiving her pension benefits on October 1, 1992, at the age of fifty-five. (Am. Compl. ¶ 11.) However, although plaintiff was employed by MSB for a total of almost seventeen years, her pension was based only on her second period of employment with MSB, which lasted for 6.75 years. (Am. Compl. ¶ 12.) Plaintiff's remaining years of service with MSB were not credited because they occurred prior to plaintiff's participation in the MSB Pension Plan, which did not commence until plaintiff was twenty-five years old - in 1962 - and because of her break in service between 1970 and 1973. (Am. Compl. ¶¶ 12, 17.)

On December 3, 2004, plaintiff filed a claim for a higher pension with the Committee, requesting that she be credited with the 5.30 years of service she accrued with the MSB Pension

Plan between 1962 and 1967, prior to her break in service from the banking industry. (Am. Compl. ¶ 23.) Plaintiff's claim was based on the Second Circuit's decision in <u>McDonald v. NYSA-ILA Pension Plan</u>, 320 F.3d 151 (2d Cir. 2003), which held that if a pension plan participant becomes vested in her pension plan, then she must be credited with the benefit accrued before her break in service, unless the break in service was longer than permitted by the "rule of parity." <u>Id.</u> at 158. Under the rule of parity, a break in service cannot cause a forfeiture of previously accrued benefits unless the number of years of the break in service is equal to, or greater than, the number of years of participation in the plan before the break. <u>Id.</u> at 160. With respect to plaintiff, her break in service lasted three years; however, her years of participation in the MSB Pension Plan prior to her break in service equaled 5.30 years. (Am. Compl. ¶ 25.)

By letter dated June 7, 2005, the Committee granted plaintiff's request for higher pension benefits and credited her with an additional 5.30 years of service. (Am. Compl. ¶ 28.) However, the Committee valued those 5.30 years of service at only fifty percent (50%) of the regular benefit rate applicable to all of plaintiff's other years of participation in the pension plan. (Am. Compl. ¶ 28.) Accordingly, the Committee increased plaintiff's pension benefits by only $36.35 per month, as opposed to $72.70 per month, retroactive to October 1, 1992, and paid her $8,365.00 in retroactive benefits, including interest at a rate of six percent (6%). (Am. Compl. ¶ 28.)

On July 13, 2005, plaintiff appealed the partial denial of her pension claim, challenging the fifty percent (50%) reduction applied to her additional years of service and seeking a higher interest rate than the six percent (6%) applied by the Committee to calculate interest on her retroactive pension payment. (Am. Compl. ¶¶ 29-32.) Plaintiff's appeal was denied by the

Committee on November 17, 2005.  (Am. Compl. ¶ 33.)

In denying her appeal, the Committee also stated that it had "now reconsidered its [initial] decision on [plaintiff's] claim."  (Am. Compl. ¶ 33 (first alteration in original).)  The Committee explained that when it first granted plaintiff's claim for higher pension benefits, it did so because it felt compelled to follow the decision in McDonald, which constituted binding law in the Second Circuit.  (Am. Compl. ¶ 33.)  However, because the HSBC Plan was no longer administered in the Second Circuit - but rather, in the Seventh Circuit - the rule set forth in McDonald was no longer binding on defendants.  (Am. Compl. ¶ 33.)  As a result, the Committee "determined to continue to apply the benefit service forfeiture provision of the Pre-ERISA MSB Plan according to its terms, in conformity with . . . Seventh Circuit decisions."[1] (Am. Compl. ¶ 33.)

Based on its decision that McDonald was no longer binding on it, the Committee determined that it need not grant plaintiff an increase in the fifty percent (50%) accrual rate it had previously granted for the additional 5.30 years of service.  (Am. Compl. ¶ 34.)  The Committee further found that plaintiff's challenge to the six percent (6%) interest rate used to calculate her retroactive pension payment was moot in light of its rejection of McDonald.  (Am. Compl. ¶ 35.)  However, the Committee decided not to rescind the lump sum retroactive payment it had already made to plaintiff.  (Am. Compl. ¶ 36.)

Plaintiff commenced the within action on July 21, 2009.  Thereafter, on July 22, 2010, the

---

[1] This appears to be a reference to McClain v. Retail Food Employers Joint Pension Plan, 413 F.3d 582 (7th Cir. 2005), wherein the Seventh Circuit disagreed with the McDonald decision and held that "Section 203(b)(1)(F) [of ERISA] demonstrates clear congressional intent to have pre-ERISA contractual relationships regarding breaks in service continue after ERISA's enactment and, thus, under § 203(b)(1)(F), certain service may be disregarded."  Id. at 587.

HSBC Plan adopted Amendment Eight to the pension plan, which requires the application of the rule of parity to the pre-ERISA service of all plan participants - in conformance with the Second Circuit's ruling in <u>McDonald</u> - retroactive to January 1, 1976, and which specifies that the rate of interest applied to the lump sum retroactive payments due to plan participants is to be calculated according to the Short-Term U.S. Treasury Bill Rate.  (Am. Compl. ¶¶ 62-66.)

On October 18, 2010, Judge Feuerstein granted plaintiff leave to amend her Complaint. Plaintiff filed her Amended Complaint on October 20, 2010, alleging that defendants violated ERISA and the terms of the pension plan: (1) by refusing to be bound by the rule of parity, (Am. Compl. ¶¶ 37-43 (Claim One)); (2) by calculating plaintiff's additional pension benefits at a rate of fifty percent (50%) of the regular accrual rate, (Am. Compl. ¶¶ 44-54 (Claims Two and Three)); (3) by applying an interest rate of six percent (6%) to plaintiff's retroactive pension payment, (Am. Compl. ¶¶ 55-61 (Claim Four)); and (4) by adopting Amendment Eight to the pension plan, resulting in a reduction in plaintiff's accrued benefit, (Am. Compl. ¶¶ 62-80 (Claims Five and Six)).

Defendants thereafter filed the within motion to dismiss, asserting that Claims One, Two and Three of the Amended Complaint are moot in light of the HSBC Plan's adoption of Amendment Eight, rendering the Court without subject matter jurisdiction over those claims. Defendants further assert that Claims Four, Five and Six should be dismissed because they fail to state a claim upon which relief can be granted.  As a result, defendants argue that the entire action should be dismissed, including those claims purported to be brought on behalf of a similarly situated class.  Plaintiff opposes defendants' motion, asserting that her claims are neither moot nor do they fail as a matter of law and that even if her claims were to be dismissed,

the claims of the putative class should still go forward.

DISCUSSION

I.    Legal Standard Under Federal Rule of Civil Procedure 12(b)(1)

A district court should dismiss a case for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when the court "lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000); see also Fed. R. Civ. P. 12(b)(1). When reviewing a motion to dismiss for lack of jurisdiction, the Court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to Plaintiffs." Wood v. GMC, No. CV 08-5224, 2010 U.S. Dist. LEXIS 96157, at *9 (E.D.N.Y. Aug. 23, 2010) (quoting J.S. ex rel. N.S. v. Attica Cent. Schs., 386 F.3d 107, 110 (2d Cir. 2004)) (additional citation omitted) (alteration in original). The Court may also "consider evidence outside the pleadings, such as affidavits" when determining whether it has jurisdiction. Stoothoff v. Apfel, No. 98 Civ. 5724, 1999 U.S. Dist. LEXIS 10459, at *1 n.1 (S.D.N.Y. July 7, 1999) (citing cases). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." Wood, 2010 U.S. Dist. LEXIS 96157, at *9 (quoting Aurecchione v. Schoolman Transp. Sys., Inc., 426 F.3d 635, 638 (2d Cir. 2005)).

II.    The Court Lacks Subject Matter Jurisdiction Over Claims One, Two and Three

Defendants assert that the Court lacks subject matter jurisdiction over the first three claims alleged in plaintiff's Amended Complaint because the HSBC Plan's adoption of Amendment Eight makes those claims moot. Plaintiff argues that her claims are not moot

because Amendment Eight establishes that an interest rate of only 3.39% be applied to plaintiff's

pension underpayment; however, plaintiff seeks an interest rate of 9% in her Amended

Complaint.

Claims One, Two and Three of the Amended Complaint allege as follows:

### FIRST CLAIM FOR RELIEF

43.    By refusing to be bound by the rule of parity, Defendants violated ERISA Section 204(b)(4), 29 U.S.C. § 1054(b)(4), as interpreted by the Second Circuit decision in <u>McDonald</u>, a binding authority in this Circuit.

\*    \*    \*

### SECOND CLAIM FOR RELIEF

45.    In initially crediting Mrs. Carlson with 5.3 years of pre-break participation, Defendants valued those years at only 1% of her Average Final 3 Years Earnings, <u>i.e.</u>, at 50% of the 2% benefit rate provided for by Section 6.2 of the Amended 1976 MSB [Penison] Plan.

\*    \*    \*

50.    By relying on ERISA's minimum standards to override the more generous provisions of the Amended 1976 MSB [Pension] Plan, Defendants violated the terms of the Plan and ERISA.

\*    \*    \*

### ALTERNATIVE THIRD CLAIM FOR RELIEF

54.    If ERISA permitted applying a reduced accrual rate for pre-ERISA service even absent any Plan provision authorizing it, Defendants would have violated 26 CFR § 1.411(b)-1(c)(2)(v) by refusing to accrue the 50% difference over Ms. Carlson's years of post-ERISA service.

(Am. Compl. ¶¶ 43, 45, 50, 54.)  Nothing in the claims set forth above, nor the supporting

allegations proffered with respect to each claim, dispute the interest rate adopted by Amendment

Eight.  In fact, there is no mention of interest - or the rate to be applied - in any of the first three claims contained in the Amended Complaint.

As set forth in the affidavits offered by defendants in support of their motion to dismiss, the HSBC Plan adopted Amendment Eight on July 22, 2010.  (Kernan Aff. ¶ 2; Ryan Aff. ¶ 2.) Pursuant to Amendment Eight, "[t]he benefit payment under a Merged Plan[2] . . . of an Eligible Merged Plan Participant[3] shall be increased to the extent necessary to reflect the total Benefit Service such Participant would have if the ERISA Rule of Parity[4] were applied to the Pre-ERISA Benefit Service and such application restored Pre-ERISA Benefit Service forfeited under the terms of the Merged Plan as in effect prior to the ERISA effective date."  (Kernan Aff., Ex. A § A-15.4.)  The benefit increase afforded by Amendment Eight is "effective as of the participant's original pension commencement date."  (Kernan Aff. ¶ 7.)

Plaintiff concedes in her Amended Complaint that "Amendment Eight requires the application of the 'rule of parity' to the pre-ERISA service of all participants in plans administered by Defendant Committee, retroactive to January 1, 1976."  (Am. Compl. ¶ 62.) Plaintiff further recognizes that "[p]articipants whose pension benefits were underpaid prior to the adoption of Amendment Eight, are to have their benefits recalculated, with the difference

---

[2]  A "Merged Plan" is "any pension plan that has been merged into the [HSBC] Plan," such as plaintiff's MSB Pension Plan.  (Kernan Aff. ¶ 5.)

[3]  An "Eligible Merged Plan Participant" is "any participant in the Plan who incurred a forfeiture of pre-ERISA benefit service under the terms of a Merged Plan as a result of a pre-ERISA break in service," as plaintiff did.  (Kernan Aff. ¶ 5.)

[4]  As stated supra, the "ERISA Rule of Parity" requires that "Pre-ERISA Benefit Service forfeited on . . . account of a Pre-ERISA Break in Service be restored to a participant if the participant's Pre-ERISA Benefit Service were of longer duration than the participant's Pre-ERISA Break in Service."  (Kernan Aff. ¶ 5.)

paid to them." (Am. Compl. ¶ 62.) Accordingly, there is no dispute that as a result of Amendment Eight, defendants have adopted the rule of parity in accordance with the Second Circuit's decision in <u>McDonald</u>. There is similarly no dispute that eligible plan participants - which includes all members of the putative class - are entitled to receive the full benefit accrual required by the <u>McDonald</u> decision. As a result, there is no longer any controversy with respect to plaintiff's first three claims contained in the Amended Complaint and those claims are therefore moot. Accordingly, the Court lacks subject matter jurisdiction over those claims. <u>Central States S.E. & S.W. Areas Health & Welfare Fund v. Merck-Medco Managed Care LLC</u>, 433 F.3d 181, 198 (2d Cir. 2005) ("Under Article III of the Constitution, federal courts have jurisdiction only over 'Cases' and 'Controversies' . . . If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim.").

Based on the forgoing, I recommend that Claims One, Two and Three of the Amended Complaint be dismissed for lack of subject matter jurisdiction.

III.    <u>Legal Standard Under Federal Rule of Civil Procedure 12(b)(6)</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "Facial plausibility" is achieved when the "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556). As a general rule, the court is required to accept as true all of the allegations contained in the complaint. <u>See Iqbal</u>, 129

S. Ct. at 1949; <u>Kassner v. 2nd Ave. Delicatessen, Inc.</u>, 496 F.3d 229, 237 (2d Cir. 2007).

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . are not entitled to the assumption of truth." <u>Iqbal</u>, 129 S. Ct. at 1949-50 (citation omitted); <u>see also</u> <u>Twombly</u>, 555 U.S. at 555 (stating that the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations," which state a claim for relief. <u>Iqbal</u>,129 S. Ct. at 1950. A complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>, 555 U.S. at 557). Although Rule 8 of the Federal Rules of Civil Procedure "marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." <u>Iqbal</u>, 129 S. Ct. at 1950. Rather, only a complaint that "states a plausible claim for relief" will survive a motion to dismiss. <u>Id.</u>

IV.    <u>Claims Four, Five and Six Fail to State a Claim for Relief</u>

The remaining three causes of action contained in the Amended Complaint all challenge the interest rate applicable to the underpayment in plaintiff's pension benefits. Specifically, Claim Four alleges that there is an "implied" obligation to pay interest on a delayed payment or underpayment of benefits and that the 6% interest rate initially awarded to plaintiff in 2005 is not sufficient to fully compensate plaintiff for the delay in payment. (Am. Compl. ¶¶ 58-60.) According to plaintiff, the application of a 6% interest rate violated the "implied terms of the Amended 1976 MSB [Pension] Plan." (Am. Compl. ¶ 61.)

Similarly, Claims Five and Six allege that the right to a reasonable interest rate is an "implied" part of plaintiff's accrued benefit under ERISA. (Am. Compl. ¶¶ 69, 76.) According to plaintiff, the interest rate adopted by Amendment Eight - which plaintiff alleges is approximately 3.39%, compounded annually - is less than a reasonable interest rate. (Am. Compl. ¶¶ 70, 78.) Accordingly, plaintiff seeks an interest rate of 9%, compounded monthly, and alleges that by reducing the amount of interest due to plaintiff as a result of the underpayment of benefits, defendants have reduced her "vested accrued benefit" in violation of ERISA. (Am. Compl. ¶¶ 70, 72, 80.)

A.    Whether the Right to Recover Interest is an Implied Benefit of a Pension Plan

In her fourth cause of action, plaintiff alleges that "[t]he obligation to pay interest on a delayed payment or on an underpayment of benefits is an implied term of any pension contract that promises payment on an ascertainable date, such as . . . in [plaintiff's] case." (Am. Compl. ¶ 58.) According to plaintiff, "[b]y applying a 6% simple interest rate to compensate [her] for the underpayment of her pension, Defendants violated the implied terms of the Amended 1976 MSB [Pension] Plan." (Am. Compl. ¶ 61.) Plaintiff instead seeks to recover interest at a rate of 9% per annum, compounded monthly.

Defendants assert that dismissal of Claim Four is warranted because there is no basis in the law for plaintiff's claim that the right to interest is an implied benefit of any pension plan. As defendants correctly point out, one of ERISA's "core functional requirements" is that "every employee benefit plan . . . be established and maintained pursuant to a written instrument." Curtiss-Wright Corp. v. Schoonejongen, 514 U.S. 73, 83 (1995) (quoting 29 U.S.C. § 1102(a)(1)); see also Smith v. Dunham-Bush, Inc., 959 F.2d 6, 10 (2d Cir. 1992) ("ERISA

explicitly provides, in section 402(a), that all agreements relating to pension benefits must be in writing."). The purpose of requiring a written plan is so that "every employee may, on examining the plan documents, determine exactly what his rights and obligations are under the plan." Curtiss-Wright, 514 U.S. at 83 (quoting H.R. Rep. No. 93-1280, p. 297 (1974)).

Notwithstanding the foregoing, plaintiff asserts, based on dicta in two Second Circuit cases, Dunnigan v. Metropolitan Life Insurance Company, 277 F.3d 223 (2d Cir. 2002), and Dobson v. Hartford Financial Services Group, Inc., 389 F.3d 386 (2d Cir. 2004), that interest on a delayed pension payment is an accrued benefit that is an implied term of any pension plan. However, this question has yet to be determined by the Second Circuit.

In Dunnigan, the plaintiff was the beneficiary of a long-term disability insurance policy who sought to recover interest on benefits paid subsequent to the date on which she was entitled to receive such payments on the grounds that the right to such interest was an implied term of the benefit plan. See Dunnigan, 277 F.3d at 225, 230. The defendant moved to dismiss plaintiff's complaint and the district court granted the motion. See id. On appeal, the Second Circuit vacated the judgment and remanded the case, stating in dicta that although ERISA's remedy under Section 502(a)(1)(B) is the recovery of "benefits under the explicit terms of the plan, . . . it seems difficult to justify a distinction that would make an explicitly stated right recoverable while an implicit right was not." Id. at 231. According to the Circuit, "[a] benefit implicitly due under the terms of a plan would seem to be a 'benefit due . . . under the terms of [the] plan.'" Id. (quoting 29 U.S.C. § 1132(a)(1)(B)).

However, the Second Circuit in Dunnigan decided that it "need not resolve the problem" because it determined that plaintiff may recover interest as a result of defendant's unreasonable

delay in paying her benefits, pursuant to Section 502(a)(3)(B) of ERISA.  Id.  As the Second

Circuit stated, "it makes no difference whether [plaintiff] also has the same entitlement under §

502(a)(1)(B)."  Id.  Accordingly, whether the right to interest is an implied term of a pension plan

still remains an open question in the Second Circuit after the issuance of the court's opinion in

Dunnigan.

  Similarly, in Dobson, the plaintiff sought to recover interest on disability benefit

payments that were paid after the date on which they were due to be paid, on the grounds that,

inter alia, "interest was a benefit implicitly provided by the [long term disability insurance]

Plan."  Dobson, 389 F.3d at 389.  The district court granted defendant's motion for summary

judgment and ruled that plaintiff had no entitlement to interest under the terms of the Plan.  See

id.  In deciding plaintiff's appeal, the Second Circuit explicitly left the parties' dispute

concerning whether the disability plan implicitly required defendant to pay interest on past-due

payments "to be resolved in the first instance by the district court."  Id. at 395.  While the court

stated in dicta that it perceived "plaintiff's interpretation" to have "some apparent merit," id., it

noted that its "observations are tentative and binding" and that the district court "should reach its

own conclusion."  Id. at 396.  The Second Circuit does not appear to have taken up this issue

since its decision in Dobson in 2004.  Accordingly, the question of whether interest is an implied

benefit under a retirement pension plan has yet to be resolved by the Second Circuit.[5]

   [5] I note that two district courts within this circuit have found interest to be an implied
term of a benefit plan since the Second Circuit's holdings in Dunnigan and Dobson.  See Dobson
v. Hartford Life & Accident Ins. Co., 518 F. Supp. 2d 365, 374-75 (D. Conn. 2007) (granting
summary judgment to plaintiff after remand and finding that where benefits are not paid when
they are due, "the value of those benefits must include accrued interest to replace their otherwise
diminished value to the plaintiff"); Babcock v. Computer Assoc. Int'l, Inc., 186 F. Supp. 2d 253,
260 (E.D.N.Y. 2002) (relying on Dunnigan in denying motion to dismiss on the grounds that

Conversely, the Seventh and Eleventh Circuits have conclusively determined this question in the negative. <u>Clair v. Harris Trust and Savings Bank</u>, 190 F.3d 495 (7th Cir. 1999), involved a class action ERISA suit wherein the members of the class brought suit concerning a delay in the payment of benefits to which they were entitled under their employer's retirement plan. <u>See</u> <u>id.</u> at 496. The plaintiffs, however, were not seeking the unpaid benefits -such benefits had already been paid in full, but forty-five days after which they were due. <u>See</u> <u>id.</u> at 497. Rather, the plaintiffs in <u>Clair</u> alleged that since their benefits were not paid in a timely fashion, they "lost the time value of the money." <u>Id.</u> Accordingly, the plaintiffs sought the interest they claimed "they could have earned had they been paid the money in a timely fashion and invested it." <u>Id.</u> In rejecting the plaintiffs' claim, the Seventh Circuit held that "interest is not a benefit specified anywhere in the plan, and only benefits specified in the plan can be recovered in a suit under [ERISA]." <u>Id.</u> The court further stated that plaintiffs' argument "that benefits include interest on benefits when the benefits are paid late is inconsistent with the principle that benefits payable under an ERISA plan are limited to the benefits specified in the plan." <u>Id.</u>

The Eleventh Circuit has taken a similar view. In <u>Flint v. ABB, Inc.</u>, 337 F.3d 1326 (11th Cir. 2003), the plaintiff brought suit maintaining that he was entitled to interest on delayed disability payments that he received after they were due to him, even though the disability plan did not specifically provide for interest on delayed benefits. <u>See</u> <u>id.</u> at 1327-28. The district court dismissed plaintiff's claim, holding that ERISA does not create an implied right to recover accrued interest for delayed payments, but instead provides recovery only for "benefits specified

_____

"interest after a reasonable period of delay can be an implicit benefit under the terms of a benefit plan").

in the plan." Id. at 1328. In affirming the district court's decision, the Eleventh Circuit stated

that it was "reluctant to infer an implied cause of action," id. at 1329, based on the Supreme

Court's "unwillingness to infer causes of action in the ERISA context, since that statute's

carefully crafted and detailed enforcement scheme provides strong evidence that Congress did

not intend to authorize other remedies that it simply forgot to incorporate expressly." Id.

(quoting Mertens v. Hewitt Assocs., 508 U.S. 248, 254 (1993)) (emphasis in original) (additional

quotation omitted); see also Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146-47

(1985) (same). Following the reasoning in Clair, the Eleventh Circuit concluded that plaintiff's

claim for implied interest failed as a matter of law. See Flint, 337 F.3d at 1329. The Eleventh

Circuit recently reaffirmed its holding in Flint, stating again that it is "reluctant . . . to imply

benefits into the terms of an employer pension plan where such benefits are not expressly

designated." Green v. Holland, 480 F.3d 1216, 1223 (11th Cir. 2007) (holding that Flint

precluded plaintiff's claim to recover interest under ERISA where the pension plan did not

expressly provide for interest).

    Here, however, the Plan is not silent. Amendment Eight explicitly provides for interest

on any delayed payment. Specifically, it states that the increase in monthly benefit payments due

to plaintiff and the participants of the HSBC Plan "shall be adjusted for interest deemed earned

between the date when the increase should have been paid and the date when the increase is

actually paid where such interest is determined in accordance with Section A-7.5(A)." (Kernan

Aff. Ex. A.) Section A-7.5(A) specifies that interest is to be calculated in accordance with the

Short-Term U.S. Treasury Bill Rate. (Kernan Aff. Ex. C.) Plaintiff, however, appears to assert

that the implied right to interest on which she is basing her claims is an implied right to a

"reasonable" interest rate, which she contends is more than the rate specified in the HSBC Plan.

Thus, although the Second Circuit has yet to conclusively resolve the question of whether there is an implied right to interest on delayed benefits under the terms of a pension plan, it is not necessary to reach this issue since the Plan has provided in Amendment Eight for interest at the Short-Term U.S. Treasury Rate. It is clear that under the Supreme Court's decision in Massachusetts Mutual v. Russell, 473 U.S. 134 (1985) and its progeny, the Court is limited to enforcement of the terms set forth in the Plan. See supra pages 11-12. It is not the function of the Court to second guess the adequacy of the Plan's provisions. Moreover, two other circuits have explicitly determined that there is no such implied right.

For all of these reasons, I recommend that the Court follow the reasoning of the Seventh and Eleventh Circuits that there is no implied right to interest on the delayed payment of benefits under the terms of a pension plan, especially where, as here, the Plan provides for interest.

I also note that, although not raised by either party, there is a line of district court cases within this circuit that hold that a plaintiff cannot maintain a stand-alone action for interest on the delayed payment of benefits where the benefits themselves have been paid in full, finding such interest to constitute "extracontractual damages," which are not available under ERISA. See, e.g., Walsh v. Eastman Kodak Co., 53 F. Supp. 2d 569 (W.D.N.Y. 1999) (finding plaintiff's claim for interest precluded by ERISA where the plan did not provide for the payment of such interest); Klein v. Empire Blue Cross and Blue Shield, No. 93 Civ. 5187, 1998 WL 336633, at *1 (S.D.N.Y. June 23, 1998) (stating that "the cases make clear that when the benefits have been fully provided, the plaintiff cannot recover compensation for any injury caused by a delay in those payments); DeVito v. Pension Plan of Local 819 I.B.T. Pension Fund, 975 F. Supp. 258

(S.D.N.Y. 1997) (finding plaintiff's claim for a higher rate of interest than that applied by the plan with respect to plaintiff's delayed benefit payments precluded as extracontractual damages under ERISA); Frank v. Civil Serv. Employee Assoc., Inc., No. 91-CV-673E, 1992 WL 73191, at *1 (W.D.N.Y. Mar. 20, 1992) (dismissing plaintiff's claim for interest on delayed payments as extracontractual damages not available under ERISA). Such cases appear to provide another ground for dismissal of plaintiff's fourth cause of action.

Accordingly, plaintiff's fourth cause of action - as well as that of the putative class members - fails as a matter of law and I recommend that it be dismissed.

B.     Whether the Interest Rate Applied by HSBC Violates ERISA

The fifth claim for relief contained in the Amended Complaint alleges that "[t]he right to a reasonable rate [of] interest, just like the benefit itself, is an 'accrued benefit,' as defined [in] ERISA." (Am. Compl. ¶ 69.) According to plaintiff, the rate of interest applied to plaintiff's underpayment of pension benefits is below what plaintiff contends is "reasonable," and therefore "caused a reduction in her accrued benefit" in violation of ERISA's "anti-cutback rule." (Am. Compl. ¶¶ 70-72.)

The "anti-cutback rule" of ERISA "prohibits any amendment of a pension plan that would reduce a participant's 'accrued benefit.'" Central Laborers' Pension Fund v. Heinz, 541 U.S. 739, 741 (2004) (citation omitted); see also 29 U.S.C. § 1054(g)(1) ("The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan . . . ."). Both ERISA and the Second Circuit have made clear that this provision only applies to pension plans. See Robinson v. Sheet Metal Workers' Nat'l Pension Fund, 515 F.3d 93, 98 (2d Cir. 2008) (affirming district court's finding that "while the anti-cutback rule protects pension plans from

-17-

diminution in benefits, it does not protect welfare plans"); see also 29 U.S.C. § 1051(1)

(providing that ERISA's anti-cutback rule does not apply to "an employee welfare benefit plan").

Moreover, the anti-cutback rule "protects only an 'accrued benefit,'" Robinson, 441 F.

Supp. 2d 405, 420 (D. Conn. 2006), aff'd, 515 F.3d at 98, which is "typically . . . expressed in the

form of an annual benefit commencing at normal retirement age." Id. at 420 (citing 29 U.S.C. §

1002(23)(A)); see also McDonald, 320 F.3d at 156 ("'Accrued' benefits refer to those normal

retirement benefits that an employee has earned at any given time during the course of

employment."). As set forth above in connection with plaintiff's fourth cause of action, the

Seventh and Eleventh Circuits have found that pension benefits are limited to those benefits

contained in the written terms of the pension plan and do not include an implied right to interest.

See supra pages 14-15. The Second Circuit has not, as of yet, held otherwise. See supra pages

12-13. Accordingly, plaintiff's "accrued benefit" can only include those benefits set forth in the

written terms of the HSBC Plan, which specify that interest shall be computed at a rate consistent

with the Short-Term U.S. Treasury Bill Rate. (Kernan Aff. Ex. C.) There is no basis in the law

to conclude that plaintiff's accrued benefit includes the right to a "reasonable" interest rate,

which plaintiff contends is 9% per annum. As a result, the interest rate applied by the HSBC

Plan does not violate ERISA's anti-cutback rule since that rule only applies to accrued benefits,

which do not, under the Terms of the Plan, include a right to a "reasonable" interest rate.

For the foregoing reasons, I recommend that plaintiff's fifth cause of action - and that of

the putative class members - be dismissed for failure to state a claim.

C.      Whether Plaintiff Can Recover Pre-Judgment Interest

Plaintiff's final cause of action alleges that plaintiff is entitled to pre-judgment

interest at a "reasonable" interest rate, which plaintiff asserts is 9% per annum.[6] (Am. Compl. ¶¶ 77-79.) While it is true that ERISA authorizes a district court to award pre-judgment interest to a "successful ERISA claimaint," the decision whether or not to do so is "committed to the sound discretion of the district court." Slupinski v. First Unum Life Ins. Co., 554 F.3d 38, 53-54 (2d Cir. 2009). Accordingly, there is no "entitlement" to pre-judgment interest under ERISA; it is a discretionary matter for the court to determine. See Manzo v. Sovereign Motor Cars, Ltd., No. 08-CV-1229, 2010 U.S. Dist. LEXIS 46036, at *42 (E.D.N.Y. May 11, 2010) (noting that the court "retain[s] discretion to award pre-judgment interest at a higher rate, a lower rate or to deny pre-judgment interest entirely").

"There is no federal statute that purports to control the rate of prejudgment interest." Jones v. Unum Life Ins. Co., 223 F.3d 130, 139 (2d Cir. 2000). As a result, "courts in this district have utilized a number of different rates" to calculate pre-judgment interest." Manzo, 2010 U.S. Dist. LEXIS 46036, at *41 (citing Hollie v. Korean Air Lines Co., Ltd., 834 F. Supp. 65, 69 (S.D.N.Y. 1993) (citing cases applying various rates)). While, as plaintiff asserts, some courts borrow from the New York Civil Practice Law and Rules and apply a 9% interest rate, state law only governs the award of pre-judgment interest in federal court where there are state law claims present, such as in a diversity case. See Schipani v. McLeod, 541 F.3d 158, 164 (2d Cir. 2008). In fact, "the New York statutory rate does not control where a judgment is awarded

_____

[6] Plaintiff's sixth cause of action also alleges that by adopting a lesser interest rate than what she deems "reasonable," defendants have reduced her "vested accrued benefit" in violation of ERISA's non-forfeiture provisions. (Am. Compl. 80.) As set forth above in connection with plaintiff's fifth cause of action, since there is no implied right to interest on delayed pension payments under the law as it currently stands, such interest cannot be considered part of plaintiff's "accrued benefit," which therefore cannot have been reduced in violation of ERISA.

on mixed federal and state claims." Manzo, 2010 U.S. Dist. LEXIS 46036, at *43 n.19 (citing

Cioffi v. New York Cmty. Bank, 465 F. Supp. 2d 202, 222 (E.D.N.Y. 2006)).  It follows then,

that the state law statutory rate of interest would not be controlling here where there are only

federal claims presented.  Moreover, "[m]ost commonly, courts have borrowed the statutory

post-judgment interest rate specified in 28 U.S.C. § 1961(a) in order to calculate prejudgment

interest," Manzo, 2010 U.S. Dist. LEXIS 46036, at *41-42 (citing Cioffi, 465 F. Supp. 2d at

222), which states that "interest shall be calculated . . . at a rate equal to the weekly average 1-

year constant maturity Treasury yield, as published by the Board of Governors of the Federal

Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. §

1961(a).

In addition, this is not a case in which there is no interest rate specified and the Court - if

it were to find plaintiff should be awarded pre-judgment interest - would need to determine the

appropriate rate of interest.  Rather, the terms of the HSBC Plan specify the rate at which interest

is to be awarded to plaintiff and other eligible Plan participants.  "In analyzing [a] pension plan

the Court is essentially provided with a question of contract interpretation."  Gerzog v. London

Fog Corp., 907 F. Supp. 590, 601 (E.D.N.Y. 1995) (citing Chicago Pneumatic Tool Co. v. Smith,

890 F. Supp. 100, 130-31 (N.D.N.Y. 1995)).  Courts "apply familiar rules of contract

interpretation in reading an ERISA plan."  Lifson v. INA Life Ins. Co., 333 F.3d 349, 353 (2d

Cir. 2003); Loughman v. Unum Provident Corp., 536 F. Supp. 2d 371, 375 (S.D.N.Y. 2008)

("The federal common law governing ERISA embodies common-sense canons of contract

interpretation.").  Accordingly, "courts review ERISA plans within the context of the entire

agreement, 'giving terms their plain meanings.'"  Loughman, 536 F. Supp. 2d at 375 (quoting

Fay v. Oxford Health Plan, 287 F.3d 96, 104 (2d Cir. 2002)). Applying these principles, it follows that the court - if it were to award pre-judgment interest - would be strongly guided by the interest rate set forth in the HSBC Plan. As a result, plaintiff's claim that a higher rate of interest should be applied to any pre-judgment interest claim is nothing more than speculative.

Plaintiff claims that interest awarded her by the HSBC Plan is not "reasonable," but fails to demonstrate - in plausible terms - why the interest rate adopted by the Plan is deficient or why the 9% interest rate she seeks is somehow more appropriate. Nor does plaintiff offer any case law that supports her claim that she is entitled to a higher rate of interest. Rather, as set forth supra, the case law demonstrates that plaintiff does not have an implied right to interest under the terms of the HSBC Plan. Nor is interest considered a part of plaintiff's "accrued benefit." Yet, defendants have chosen to award her - and other eligible Plan participants - interest on their pension underpayments, even though not legally required to do so. The fact that plaintiff does not agree with the rate of interest awarded does not create a claim that rises above the speculative level, as mandated by Twombly.

For the foregoing reasons, I recommend that plaintiff's sixth claim for relief - and that of the putative class members - be dismissed for failure to state a claim upon which relief can be granted.


V.     The Plan Administrator Should Oversee the Pension Payments

Finally, plaintiff asserts that the Court should retain supervision over the HSBC Plan's administrative process of identifying those participants who are eligible to receive additional pension benefits under Amendment Eight and the payment to those individuals. (Pl. Mem. of

Law 18.)  Defendants dispute the need for court supervision.

"Among other things, ERISA, and the cases interpreting it, seek to 'encourage[] resolution of benefits disputes through internal administrative proceedings rather than costly litigation.'" DaCosta v. Prudential Ins. Co., No. 10-CV-720, 2010 WL 4722393, at*6 (E.D.N.Y. Nov. 12, 2010) (quoting Conkright v. Frommert, __ U.S. __, 130 S. Ct. 1640, 1649 (2010)) (alteration in original).  Accordingly, the Supreme Court has granted "discretionary authority" to ERISA plan administrators in interpreting their plans and has held that such administrators are "entitled to deference in exercising that discretion." Conkright, 130 S. Ct. at 1644 (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)).  According to the Supreme Court, "grant[ing] primary interpretive authority over an ERISA plan to the plan administrator[] preserves the 'careful balancing' on which ERISA is based." Conkright, 130 S. Ct. at 1649. Moreover, such deference "promotes predictability, as an employer can rely on the expertise of the plan administrator rather than worry about unexpected and inaccurate plan interpretations that might result from de novo judicial review." Id.

Based on the foregoing, I recommend that this action be dismissed.  I further recommend that deference be given to the interpretations of the HSBC Plan's administrator in determining who is eligible to receive additional pension benefits as a result of the Plan's adoption of Amendment Eight and that the Court decline to provide continued supervision over that process.

RECOMMENDATION

For the foregoing reasons, I recommend that defendants' motion to dismiss be granted and that all of plaintiff's claims, as well as those of the putative class, be dismissed in their

entirety.

<u>Objections to this Report and Recommendation</u>

Any written objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further appellate review.  <u>Thomas v. Arn</u>, 474 U.S. 140, 145 (1985); <u>IUE AFL-CIO Pension Fund v. Herrmann</u>, 9 F.3d 1049, 1054 (2d Cir. 1993); <u>Frank v. Johnson</u>, 968 F.2d 298, 299-300 (2d Cir. 1992).

**SO ORDERED:**

Dated:  Central Islip, New York
         April 5, 2011

                                                    /s/ E. Thomas Boyle
                                                    E. THOMAS BOYLE
                                                    United States Magistrate Judge